No. 98-397

IN THE SUPREME COURT OF THE STATE OF MONTANA

1999 MT 92

294 Mont. 202

979 P.2d 210

IN THE MATTER OF THE ADOPTION

OF C.R.N.,

a minor child.

APPEAL FROM: District Court of the Eighteenth Judicial District,

In and for the County of Gallatin,

Honorable Mike Salvagni, Judge Presiding.

COUNSEL OF RECORD:

For Appellant:

Jeannette Ellen Berry, Attorney at Law, Bozeman, Montana

For Respondent:

Mark A. Bryan, Bryan and Atkins, Bozeman, Montana

Submitted on Briefs: January 7, 1999

Decided: April 29, 1999

Filed:

_____

Clerk

Chief Justice J. A. Turnage delivered the Opinion of the Court.

¶1. In proceedings before the Eighteenth Judicial District Court, Gallatin County, on a petition for the adoption of C.R.N., the District Court determined that the adoption could proceed without the consent of C.R.N.'s natural father, Joshua Gabe Nabors (Joshua), because of Joshua's failure to contribute to the child's financial support during the year immediately preceding the filing of the petition. Joshua appeals. We affirm.

## ISSUE

¶2. Did the District Court err in concluding that Joshua's consent to the adoption of C.R.N. was not required under the provisions of § 40-8-111(1)(a)(v), MCA (1995)?

## BACKGROUND

¶3. C.R.N. was born the daughter of Joshua and Rachel M. Minert (Rachel) in Ukiah, California, in October 1990. At the time of C.R.N.'s birth, Rachel was 14 years old and Joshua was 15 years old. Rachel and Joshua have never been married. Joshua resides in Redwood Valley, California. Rachel is married to and resides with the petitioner in this case, Garrick Cy Minert (Cy), in Bozeman, Montana. C.R.N. has been in the primary custody of her mother since birth and currently resides with her mother and Cy in Bozeman, Montana.

¶4. From 1990 to 1995, Rachel and C.R.N. resided in California, but in August 1995 they moved to Montana, where Cy was pursuing his college education. Cy has been providing support for C.R.N. since August 1995. Cy filed his petition for the adoption of C.R.N. on May 27, 1997.

¶5. No formal paternity action regarding C.R.N. has been filed by either natural parent. However, Joshua is listed as the father on the birth certificate and has admitted his paternity of this child. There is no voluntary written child support agreement or court-ordered child support obligation in place for C.R.N.

¶6. On January 9, 1998, a hearing was held before the District Court to determine whether Joshua's consent to the adoption of C.R.N. by Cy was required under § 40-8-

111, MCA (1995). The District Court found that because Joshua had not contributed to the support of C.R.N. during the year preceding the filing of the petition, Joshua's consent to the adoption was not necessary in order for the adoption proceeding to move forward. Joshua appeals.

## STANDARD OF REVIEW

¶7. We review a district court's conclusions of law to determine whether those conclusions are correct. *In re the Adoption of S.P.M.* (1994), 266 Mont. 269, 271, 880 P.2d 297, 298. We review a district court's findings of fact to determine if those findings are clearly erroneous. Rule 52(a), M.R.Civ.P.; *Matter of Adoption of Doe* (1996), 277 Mont. 251, 255, 921 P.2d 875, 877-78. "[B]ecause the termination of parental rights involves a fundamental liberty interest, a decree which purports to terminate such rights must be supported by clear and convincing evidence." *Doe*, 277 Mont. at 255, 921 P.2d at 878 (citations omitted). "Clear and convincing evidence" in the context of a parental rights termination case exists where the evidence is definite, clear, and convincing, or a particular issue is clearly established by a preponderance of the evidence or by clear preponderance of the proof. *In re E.W.*, 1998 MT 135, ¶ 12, 959 P.2d 951, ¶ 12, 55 St.Rep. 536, ¶ 12.

## DISCUSSION

¶8. Did the District Court err in concluding that Joshua's consent to the adoption of C.R.N. was not required under the provisions of § 40-8-111(1)(a)(v), MCA (1995)?

¶9. The relevant portions of § 40-8-111, MCA (1995), read as follows:

**Consent required for adoption.** (1) An adoption of a child may be decreed when there have been filed written consents to adoption executed by:

(a) both parents, if living, or the surviving parent of a child, provided that consent is not required from a father or mother:

. . .

(v) if it is proved to the satisfaction of the court that the father or mother, if able, has not contributed to the support of the child during a period of 1 year before the filing of a petition . . . .

No

To satisfy the elements of § 40-8-111(1)(a)(v), MCA (1995), the petitioner must establish two things: first, that the nonconsenting parent failed to provide financial support for the child within the year immediately preceding the filing of the petition; and second, that the nonconsenting parent was otherwise able, during that same period of time, to contribute to the support of the child. *Doe*, 277 Mont. at 259, 921 P.2d at 880.

**¶10. Joshua contends that neither of these considerations have been satisfied in this case. He argues that the District Court's finding that he failed to contribute to the support of C.R.N. for the period of one year prior to the time Cy filed his petition for adoption is clearly erroneous because the evidence showed Joshua had provided health insurance for C.R.N. through his employer from January 1, 1996 to January 1, 1997. The District Court found that there was no reliable evidence of this coverage as no documentation was produced showing the amount of any premiums deducted from Joshua's wages, Joshua himself did not know what the price of such premiums were, and no documentation was produced showing the amounts of any medical expenses paid by Joshua or his employer on behalf of C.R.N. Our review of the record supports the finding of the District Court with regard to the existence of the purported insurance coverage, and we therefore will not disturb this finding on appeal.**

**¶11. Additionally, Joshua argues that the District Court erred in concluding that the clothing and other gifts supplied to C.R.N. by other members of Joshua's family did not constitute support because at the time the gifts were made, it was Joshua's belief that these contributions qualified as support paid on his behalf. This argument is not supported by the law or the record in this case, and the District Court properly disregarded evidence of the gifts given by members of Joshua's family in determining that no support had been provided by Joshua during the year prior to the filing of the petition.**

**¶12. "[W]e have repeatedly held that providing occasional articles of clothing or other gifts does not satisfy a parent's obligation to provide financial support." *In re L. E.B.* (1993), 259 Mont. 492, 496, 856 P.2d 1382, 1385 (citations omitted). Furthermore, the testimony of both Joshua and his sister, Shayne, indicated that none of these gifts had been presented at Joshua's behest; nor was it the intention of Joshua's family members to bestow these gifts in lieu of Joshua's financial support obligations, but rather as a personal demonstration of their love and affection for C.**

R.N. Therefore, these gifts did not satisfy any part of Joshua's support obligation, and the District Court was correct in so finding.

¶13. Joshua's final argument on this issue is that the lack of a child support order in this case generated confusion on Joshua's part with regard to the extent of his financial obligations towards C.R.N. and that the absence of such an order should be viewed as an exculpatory factor in determining whether Joshua did in fact provide support. In support of this argument, Joshua relies on *Matter of Adoption of D.J.V.* (1990), 244 Mont. 209, 796 P.2d 1076, for the proposition that this Court may be willing to take a more lenient view of a parent's failure to provide support in situations in which no support order existed.

¶14. Joshua's reliance on our ruling in *D.J.V.* is misplaced because our holding in that case is directly contrary to the position advanced by Joshua on appeal. In *D.J.V.* we stated:

[A] parent's obligation to his child is not dependent on an order of the court. [Citation omitted.] There is no requirement under § 40-8-111(1)(a)(v), MCA, that the child support be court-ordered. If the father has provided no support during the one year period prior to the filing of the petition for adoption and the father is able to provide support, then consent is not required. The absence of a child support order does not absolve [a parent] of his legal duty to support his child.

*D.J.V.*, 244 Mont. at 213, 796 P.2d at 1078. For this reason, we hold that the District Court did not err in finding that Joshua failed to contribute to the financial support of C.R.N. during the one year period immediately preceding the filing of Cy's petition for adoption.

¶15. Joshua also contends that the District Court erred in finding that Joshua was able to provide support to C.R.N. during the year preceding the petition. In determining whether a nonconsenting parent was able to contribute to the support of a child, the District Court must consider several factors, including: 1) the parent's ability to earn income; 2) the parent's willingness to earn an income and support the child; 3) the availability of employment; and 4) the parent's use of funds to provide himself only with the bare necessities before contributing to the support of the child. *Doe*, 277 Mont. at 259, 921 P.2d at 880.

¶16. The District Court found that not only did Joshua have employment available to him, but that he had, in fact, worked at a lumber company during part of the year

preceding the filing of the petition. The court also found that Joshua had been able to provide himself with the necessities of life and had even offered in January 1996 to pay Rachel child support in the amount of $250 per month, although this was never actually done. The District Court found further that Joshua chose not to contribute to C.R.N.'s support, not because of his limited resources, but because he believed he was being denied contact with the child.

¶17. In his appellate brief, Joshua again argues that the lack of a court order specifying the amount of his child support obligations led to confusion on his part regarding the status of those obligations. He also argues that historically his income has never been substantial due to his age, erratic employment history, and substance abuse problems.

¶18. The fact that Joshua has experienced an erratic employment history and began suffering from a substance abuse problem shortly after C.R.N.'s birth is largely irrelevant to a discussion of whether he had the ability to earn an income during the year immediately preceding the filing of the petition. The evidence presented to the District Court clearly showed that Joshua was gainfully employed and capable of contributing something towards the support of C.R.N. during at least part of 1996. Moreover, Joshua concedes in his appellate brief that "for a portion of the year preceding the filing of the Petition in this matter, [he] had some ability to pay child support." Therefore, we hold that the District Court did not err in finding that the second factor of § 40-8-111(1)(a)(v), MCA (1995), has been met in this case.

¶19. As a final argument, Joshua contends that the doctrine of equitable estoppel should be applied in this case to prohibit the application of § 40-8-111(1)(a)(v), MCA (1995), because the actions of Rachel and Cy prevented Joshua's contact with C.R.N. and made contributions of support difficult. Although the application of equitable estoppel was argued before the District Court in Joshua's Proposed Findings of Fact and Conclusions of Law, that argument was made in relation to the issue of willful abandonment under § 40-8-111(1)(a)(iii), MCA (1995), and not in relation to the issue of contribution of support under § 40-8-111(1)(a)(v), MCA (1995).

¶20. Since the District Court found that Joshua did not willfully abandon C.R.N., the issue of equitable estoppel was not addressed by the District Court in its Findings of Fact, Conclusions of Law and Order. Whether the doctrine of equitable estoppel should be applied to prevent the application of the provisions of § 40-8-111(1)(a)(v),

MCA (1995), raises for the first time on appeal an issue not presented to the court below. Generally such an issue may not be considered on appeal. *In the Matter of the Paternity of Adam* (1995), 273 Mont. 351, 358, 903 P.2d 207, 211. For that reason, we decline to address whether the doctrine of equitable estoppel is applicable in this instance.

¶21. Affirmed.


/S/ J. A. TURNAGE


We concur:


/S/ KARLA M. GRAY

/S/ TERRY N. TRIEWEILER

/S/ JAMES C. NELSON


Justice W. William Leaphart dissenting.


¶22. I dissent because the District Court has mistaken which party bore the burden of proof on the question whether Joshua provided C.R.N. with health insurance. The District Court found that

Joshua failed to establish by credible evidence that he provided health insurance coverage in 1996 through his employment with Piedmont Lumber Company and that said coverage can be counted as child support.

No

However, in Matter of Adoption of J.B.T. (1991), 250 Mont. 205, 207-208, 819 P.2d 178, 179, the Court interpreted § 40-8-111(1)(a)(v), MCA, and concluded that "the burden of proof[, which] requires that there must be clear and convincing evidence that the parent has not contributed to the support of the child for one year[,] . . . falls upon the petitioner." In the present case, the District Court admitted a letter to Joshua from the Bozeman Clinic, which stated in part:

Please find enclosed a refund check of $198.00[.] Your daughter [C.R.N.] is also covered by Medicaid. Medicaid pays for any services not covered by your Blue Cross & Blue Shield Policy. If you have any questions, please call.

This letter clearly suggests that Joshua had arranged health insurance for C.R.N. The District Court also admitted a copy of a Blue Cross of California Group Enrollment Form that listed Joshua and C.R.N. Finally, the District Court admitted an "Explanation of Benefits" statement from Blue Cross of California. The Explanation of Benefits statement identifies Joshua as the subscriber and recognizes C.R.N. as a covered patient. The Explanation of Benefits statement indicates that C.R.N. made three medical visits to the Bozeman Clinic in 1996 and that the charges for those visits have been applied to Joshua's deductible. With the admission of that evidence, it was Cy, not Joshua, who had the burden of proving by clear and convincing evidence either that Joshua did not provide C.R.N. with health insurance coverage in 1996 or that such coverage did not count as child support.

**¶23. I would reverse and remand for findings on the question of health insurance in accordance with this Court's decision in *Matter of Adoption of J.B.T.***

/S/ W. WILLIAM LEAPHART