FILED

10/16/2024

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 23-0611

DA 23-0611

IN THE SUPREME COURT OF THE STATE OF MONTANA

2024 MT 234N

IN THE MATTER OF THE ADOPTION OF C.M.C.,

D.C. and J.C.,

       Petitioners and Appellees,

   and

C.S.,

       Respondent and Appellant.

APPEAL FROM:   District Court of the Eighteenth Judicial District,
In and For the County of Gallatin, Cause No. DA-19-19C
Honorable John C. Brown, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

      Andrea Collins, Collins Law PLLC, Bozeman, Montana

      For Appellees:

      Kirsten Mull Core, Law Office of Kirsten Mull Core, P.C., Bozeman, Montana

Submitted on Briefs:  June 12, 2024

Decided:  October 16, 2024

Filed:

_____
Clerk

Justice Ingrid Gustafson delivered the Opinion of the Court.

¶1 Pursuant to Section I, Paragraph 3(c), Montana Supreme Court Internal Operating Rules, this case is decided by memorandum opinion and shall not be cited and does not serve as precedent. Its case title, cause number, and disposition shall be included in this Court's quarterly list of noncitable cases published in the Pacific Reporter and Montana Reports.

¶2 C.S. (Respondent) appeals from the July 6, 2023 Findings of Fact, Conclusions of Law and Decree of Adoption issued by the Eighteenth Judicial District Court, Gallatin County.

¶3 The parties generally agree on the facts. Respondent and the natural father were never married. Father was previously married to Respondent's sister, with whom he had two other children who were, at times, removed from his care by the State and are now adults. When Respondent's sister went to prison, Respondent frequently provided child care for father. C.M.C. was born in April 2007 and resided solely with Respondent, with almost no contact with father until age seven. At Respondent's urging, C.M.C. met father on his seventh birthday, as Respondent believed it was in C.M.C.'s best interest to develop a relationship with him.

¶4 In 2014, the parties entered a joint parenting plan, which provided for C.M.C. to reside primarily with Respondent and have weekend contact with father. This arrangement remained until March 2016, when father filed an ex parte motion alleging domestic violence and unsafe conditions in Respondent's home. The motion was granted, placing

C.M.C. with father pending a hearing. While Respondent contested the ex parte motion's allegations, to resolve their parenting issues the parties ultimately agreed to an amended parenting plan in April 2016. The amended parenting plan granted father full-time custody with Respondent to have reasonable telephone contact with C.M.C. The amended parenting plan also imposed obligations on both parties to foster a healthy relationship between C.M.C. and both parents, as well as maintain family ties.

¶5      On May 9, 2019, Petitioners, the natural father and stepmother, filed a Verified Combined Petition for Termination of Parental Rights and Stepparent Adoption, seeking to terminate Respondent's parental rights to C.M.C. and order the adoption of C.M.C. by the stepmother. Respondent contested both the termination and adoption. A hearing was held on April 5, 2021, when C.M.C. was 14 years old.

¶6      At the termination hearing, Respondent's counsel argued that Petitioners erroneously sought relief under §§ 42-2-609 and -610, MCA, which apply only to putative fathers and are inapplicable to this case. At the hearing, Petitioners conceded they were only seeking relief under §§ 42-2-607 and -608, MCA, but later moved to amend the petition to include relief under § 42-2-609, MCA. At the close of the hearing, the District Court took the matter under advisement.

¶7      Post-hearing, Petitioners filed a Combined Motion and Brief to Amend Pleadings conceding the inapplicability of §§ 42-2-609 and -610, MCA. The District Court never issued any ruling with regard to the Combined Motion but, over two years later, on July 6, 2023, issued the ruling now being appealed which granted the petition, terminated

3

Respondent's parental rights under §§ 42-2-607, -608, and -609, MCA, and ordered the adoption of C.M.C. by his stepmother.

¶8 We review a district court's interpretation and application of statutes for correctness, and findings of fact to determine whether they are clearly erroneous. *Hansen v. Moats* (*In re Parenting of S.J.H.*), 2014 MT 40, ¶ 8, 374 Mont. 31, 318 P.3d 1021.

¶9 The parent-child relationship is a constitutionally protected fundamental right, safeguarded by the Fourteenth Amendment. *Troxel v. Granville*, 530 U.S. 57, 66, 120 S. Ct. 2054, 2060, 147 L. Ed.2d 49 (2000). Title 42, Chapter 2, part 6 sets forth the statutory criteria for termination of parental rights. Section 42-2-607, MCA, delineates the grounds for termination of a parent's rights to a child who is the subject of an adoption proceeding. Upon review of the District Court's conclusions of law, we conclude the District Court's application of statutes was incorrect, such that reversal for legal error is required. First, the District Court referenced § 42-2-607(3), MCA, in support of its Conclusion of Law 25 concluding a parent-child relationship does not exist between Respondent and C.M.C. Section 42-2-607(3), MCA, does not apply because a determination that a parent-child relationship "does not exist" is limited to putative fathers as provided in § 42-2-609, MCA. Second, as referenced in Conclusion of Law 26, a determination of "unfit[ness]" may be made on the ground that "the parent has willfully abandoned the child, as defined in 41-3-102." Section 42-2-608(1)(b), MCA. But, "not see[ing]" the child for a period of years alone does not meet the definition of abandonment in § 41-3-102, MCA. The District Court made no finding of abandonment.

4

¶10 Finally, related to Conclusion of Law 27, § 42-2-608(1)(c), MCA, allows a finding of unfitness if the parent, if able, has not contributed to the support of the child for an aggregate period of one year before the filing of a petition for adoption. Even assuming no clear error in the court's factual finding that C.S. was able to pay child support, the record showed that she had contributed regularly to C.M.C.'s support during the year prior to the filing of the adoption petition and thereafter. *Compare In re Adoption of R.A.S.*, 208 Mont. 438, 444, 679 P.2d 220, 224 (1984) (holding that one payment made eleven months and eighteen days before the filing of the petition for adoption was not "'support' contributed 'during a period of one year prior to the filing of the petition for adoption'"), *with In re the Adoption of C.W.D.*, 2005 MT 145, ¶¶ 11-14, 327 Mont. 301, 114 P.3d 214 (upholding trial court's determination that parent was able yet failed to provide support for his children during an aggregate one-year period prior to the filing of the petition by examining the evidence for the entire one-year period preceding the filing). As this was the only other basis on which the District Court found unfitness, we conclude that it was incorrect to do so under our precedent. As such, we reverse the District Court's termination of Respondent's parental rights and C.M.C.'s adoption by his stepmother.[1]

¶11 We have determined to decide this case pursuant to Section I, Paragraph 3(c) of our Internal Operating Rules, which provides for memorandum opinions. In the opinion of the

---

[1] It is noted that nothing in this Opinion precludes step-mother from effectuating an adult adoption of C.M.C. upon C.M.C. reaching the age of majority and providing his consent.

Court, the case presents a question controlled by settled law or by the clear application of applicable standards of review.

/S/ INGRID GUSTAFSON

We concur:

/S/ MIKE McGRATH
/S/ JAMES JEREMIAH SHEA
/S/ BETH BAKER

Justice Jim Rice, dissenting.

¶12     Termination of parental rights is authorized under § 42-2-608(1), MCA, on account of unfitness, including abandonment, which is defined to encompass "leaving a child under circumstances that make reasonable the belief that the parent does not intend to resume care of the child in the future." Section 41-3-102, (1)(a)(i), MCA. While application of such provisions can be challenging in cases where parental contact or support is sporadic over a period of years, I believe there was sufficient evidence in the record, if credited by the District Court as factfinder, to support its findings of fact that Respondent had not seen C.M.C. since April 2016 and had not "maintained a parent-child relationship with [C.M.C.] nor provided care or consistent support for [C.M.C.]." Thus, I believe the District Court's findings were supported by the record as a whole and authorized by the statute. I would affirm.

/S/ JIM RICE